## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOSEPH VALCHEZ LAUE, #520423** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-490** |
| **TIM HOOPER, WARDEN** | **SECTION "T" (5)** |

## <u>REPORT AND RECOMMENDATION</u>

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.    *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE** as untimely and the motion to stay be **DENIED**.

### Procedural History

Petitioner, Joseph Valchez Laue, is a convicted inmate confined at the Elayn Hunt Correctional Center in St. Gabriel, Louisiana.    In November 2016, he was charged by grand jury indictment with one count of second-degree murder, one count of distribution of heroin, one count of possession with intent to distribute heroin, and one count of possession with

intent to distribute buprenorphine (suboxone).[1]    On September 26, 2019, a jury found him

guilty as charged on the first three counts and guilty of only possession on count four.[2]    His

motion for a new trial and motion for post-verdict judgment of acquittal were denied.    On

October 10, 2019, he was sentenced to life imprisonment at hard labor without benefit of

probation, parole or suspension of sentence for second-degree murder; 25 years'

imprisonment at hard labor, with 10 years to be served without benefit of probation, parole

or suspension of sentence, for distribution of heroin; 25 years' imprisonment at hard labor,

with 10 years to be served without benefit of probation, parole or suspension of sentence,

for possession with intent to distribute heroin; and 2 years' imprisonment at hard labor for

possession of suboxone, all to run concurrently.[3]  The State filed a multiple-offender bill of

information.    The motion to quash the multiple-offender bill was denied.    On November

6, 2019, Laue stipulated to the allegations in the multiple-offender bill and the trial court

vacated the sentences imposed on counts two, three and four.    The trial court sentenced

him as a third-felony habitual offender to 35 years' imprisonment at hard labor without

---

[1]  ECF No. 15-1 at 28, Minute Entry, 11/17/2016; *see also* Grand Jury Indictment, Parish of St. Tammany, ECF No. 15-1 at 83.

[2]  ECF No. 15-1 at 73, Minute Entry, 9/26/2019.

[3]  ECF No. 15-1 at 76, Sentencing Minute Entry, 10/10/2019; ECF No. 15-6 at 206-07, Sentencing Transcript.    The Louisiana First Circuit found a discrepancy between the minute entry and sentencing transcript and noted that the transcript prevailed.    *State v. Laue*, 326 So.3d at 270 n. 2.    This report likewise uses the original sentences from the sentencing transcript.

benefit of probation or suspension of sentence for distribution of heroin, 35 years' imprisonment at hard labor without benefit of probation or suspension of sentence for possession with intent to distribute heroin, and 20 years' imprisonment at hard labor without benefit of probation or suspension of sentence for possession of suboxone, to run concurrently with each other and with the life sentence.[4]

On direct appeal, Laue claimed that the evidence was insufficient to convict him of second-degree murder; the trial court erred in denying his motion to sever the charges; and his life sentence was excessive.    On December 30, 2020, after reviewing the record for patent error, the court of appeal set aside the conviction on count four because the jury verdict was not unanimous.[5]    The remaining convictions and sentences were affirmed.[6] On August 2, 2021, his application for rehearing was denied.    On November 17, 2021, his related writ of certiorari was denied by the Louisiana Supreme Court.[7]    He had 90 days (until February 15, 2022) to file a petition for a writ of certiorari with the United States Supreme Court.    U.S. Sup. Ct. R. 13.    On March 3, 2022, he signed and dated a petition for

---

[4]  ECF No. 15-1 at 78, Habitual Offender Sentencing Minute Entry, 11/06/2019; ECF No. 15-6 at 213, Transcript of Multiple Bill Hearing Sentencing.

[5]  The State subsequently entered a *nolle prosequi* as to that count.    ECF No. 15-9 at 27.

[6]  *State v. Laue*, 2020-KA-0225 (La. App. 1 Cir. 12/30/2020), 326 So.3d 267.

[7]  *State v. Laue*, 2021-K-1329 (La. 2021), 327 So.3d 993.

writ of certiorari, which was filed with the United States Supreme Court on March 10, 2022.[8]

The petition was summarily denied by the Supreme Court on April 25, 2022.[9]

On March 27, 2023, Laue submitted his uniform application for post-conviction relief to the state district court challenging his criminal convictions.[10]    In that application, he raised the following grounds for relief:    (1) the second-degree murder statute was unconstitutional; (2) the evidence was not sufficient to convict him of second-degree murder and appellate counsel was ineffective in not fully briefing the claim on appeal; (3) he was denied the right to confront the coroner who performed the victim's autopsy; (4) the prosecutor's closing argument was improper and trial counsel was ineffective for failing to object.    On January 25, 2024, the district court issued a judgment denying his application

---

[8]  ECF No. 16-1, Supreme Court Petition for Writ of Certiorari, No. 21-7384.

[9]  *Laue v. Louisiana*, --- U.S. ---, 142 S.Ct. 2659, 212 L.Ed.2d 612 (2022).

[10]  ECF No. 15-9 at 57, Uniform Application for Post-Conviction Relief.    Federal habeas courts apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing by a *pro se* prisoner, and therefore such a document is considered "filed" on the date the prisoner "places the filing in the prison mail system." *Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006). When that date cannot be gleaned from the state court record, the Court will use the signature date of the application as the filing date, in that the application was obviously placed in the mail no earlier than the date it was signed. *See United States v. Minor*, 582 F. App'x 315, 316 (5th Cir. 2014); *Estes v. Boutté*, Civ. Action No. 19-2289, 2020 WL 1990823, at *2 (E.D. La. Mar. 6, 2020), *adopted*, 2020 WL 1984331 (E.D. La. Apr. 27, 2020); *Crochet v. Goodwin*, Civ. Action No. 13-3106, 2014 WL 5093995, at *2 n. 10 (E.D. La. Oct. 8, 2014); *Thornton v. Terrell*, Civ. Action No. 09-1632, 2009 WL 4855743, at *1 n. 1 (E.D. La. Dec. 4, 2009).    Because the PCR application could not have been submitted earlier than the date it was signed by petitioner, the Court will use the signature date of March 27, 2023, rather than the file-stamped date of March 31, 2023.

for post-conviction relief.[11]    On February 16, 2024, he filed a "Motion for New Trial & Request for Leave to Supplement and Amend Post Conviction Relief with Incorporated Memorandum in Support *or in the Alternative* Notice of Intent and Request for a Return Date."[12]    In the motion, he also stated he had lost some legal documents when transferred and asked for an extension of time in which to file his supervisory writ application.    The state district court set a return date of May 15, 2024, for him to file his supervisory writ application with the court of appeal.[13]  The order attached to the motion by Laue was signed on February 23, 2024, with the language regarding the new trial and leave to amend the post-conviction relief application crossed out.    Laue filed a notice of intent to seek supervisory writs from that judgment denying relief.    The state district court set the same return date, May 15, 2024, for him to file his supervisory writ application.[14]

On May 11, 2024, Laue filed his related application for supervisory writs with the Louisiana First Circuit Court of Appeal.[15]    On August 12, 2024, the court of appeal

---

[11]  ECF No. 15-9 at 115, State District Court Judgment denying PCR, 1/25/2024.

[12]  ECF No. 15-9 at 125.    The motion was signed on February 16 and stamped as filed on February 22, 2024.

[13]  ECF No. 15-9 at 135.

[14]  ECF No. 15-9 at 158, 163.

[15]  ECF No. 15-10 at 3.    His application is signed and dated May 11, 2024.    It was stamped as filed by the Court on May 16, 2024.

summarily denied the writ.[16]    On September 10, 2024, Laue signed and dated his Louisiana Supreme Court supervisory writ application.[17]    On September 25, 2024, Laue wrote the Supreme Court Clerk to ask for confirmation of receipt, explaining he submitted the application for filing on September 10, but noting that Hurricane Francine may have delayed the acknowledgment of his filing.[18]    On October 3, 2024, he wrote another letter to the Clerk and attached three processed withdrawal slips, evidencing that he gave the documents to prison officials to be mailed on September 10, 2024, but they were not mailed by the prison until September 24, 2024.    He requested that the court consider the mailbox rule and the possible delay from the hurricane and find his application timely.[19]    By letter dated December 8, 2024, he asked to supplement his writ application to include a 2024 Supreme Court decision, *Smith v. Arizona*.[20]  On December 27, 2024, the Louisiana Supreme Court issued a ruling refusing to consider the writ because it was not timely filed.[21]

---

[16]  *State v. Laue*, 2024 KW 0438, 2024 WL 3755580 (La. App. 1 Cir. Aug. 12, 2024); ECF No. 15-10 at 1.

[17]  ECF No. 15-11 at 2-26, Louisiana Supreme Court Writ No. 24-KH-1186.    His letter submitted with the writ application was also dated September 10, 2024.    *Id.* at 29.    The filing was postmarked September 24, 2024.    *Id.* at 30, 146.    The writ application was stamped as filed with the court on September 26, 2024.

[18]  ECF No. 15-11 at 148.

[19]  ECF No. 15-11 at 150.

[20]  ECF No. 15-11 at 159.

[21]  *State v. Laue*, 2024-1186 (La. 2024), 397 So.3d 1218; ECF No. 15-11 at 1.

On January 15, 2025, he signed and submitted the instant federal application for habeas corpus relief.[22]    Laue asserts the following grounds for relief:    (1) he was denied his right to access the courts during post-conviction relief proceedings because prison officials failed to mail his application for writ of certiorari to the Louisiana Supreme Court in a timely fashion; (2) he was denied his Sixth Amendment right under the Confrontation Clause because the State was allowed to substitute the testimony of a surrogate coroner for that of the coroner who performed the autopsy on the victim, and to the extent the claim may have been abandoned, appellate counsel was ineffective for failing to raise the confrontation issue on appeal; (3) La. R.S. 14:30.1(A)(3) is unconstitutional; (4) he was denied the right to due process when he was convicted of second-degree murder based on insufficient evidence; and (5) the State committed prosecutorial misconduct during closing argument and trial counsel was ineffective for not raising an objection.    In response, the State argues that Laue's federal habeas petition is untimely.[23]

Laue did not file a reply to the State's response.    Instead, he submitted a "Notice of Pendency of Action and Request for Stay," in which he requests a stay of his federal habeas proceedings until "the conclusion of exhausting two new interpretations of constitutional

---

[22] ECF No. 1. The petition was originally filed in the United States District Court for the Middle District of Louisiana and transferred to the Eastern District.

[23] At present, Respondent addresses only timeliness, but does not waive additional defenses of exhaustion or procedural default. ECF No. 16 at 9.

law that were handed down by the Louisiana Supreme Court."[24]    He attached a copy of the second post-conviction relief memorandum he recently filed in state district court, in which he argues that the two Louisiana Supreme Court cases "greatly impact his rights under the law, and both cases, had they been known and available at the time of his trial in 2019 would have produced a different outcome." [25]    For the following reasons, the undersigned recommends that Laue's petition be dismissed as untimely and the motion to stay be denied.

**Analysis**

*A.   Statute of Limitations*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one year of the date on which his underlying criminal judgment becomes "final."    *See* 28 U.S.C. § 2244(d)(1)(A) (one-year limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review").[26]    Regarding finality, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his

---

[24]  ECF No. 17 at 1.

[25]  ECF No. 17-1.

[26]  Title 28 U.S.C. § 2244(d)(1) has alternative provisions for different events that can trigger the start of the limitations period; however, those provisions do not apply here.

conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. *Roberts v. Cockrell*, 319 F.3d 690, 693 (5th Cir. 2003). *However, "[i]f the defendant stops the appeal process before that point," ... "the conviction becomes final when the time for seeking further direct review in the state court expires."* *Id.* at 694; *see also Foreman v. Dretke*, 383 F.3d 336, 338 (5th Cir. 2004) (Section 2244(d)(1)(A) gives alternative routes for finalizing a conviction: either direct review is completed or the time to pursue direct review expires).

*Although federal, not state, law determines when a judgment is final for federal habeas purposes, a necessary part of the finality inquiry is determining whether the petitioner is still able to seek further direct review. See Foreman, 383 F.3d at 338–39. As a result, this court looks to state law in determining how long a prisoner has to file a direct appeal. See Causey v. Cain*, 450 F.3d 601, 606 (5th Cir. 2006); *Roberts*, 319 F.3d at 693.

*Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008) (emphasis added).

Laue's petition for writ of certiorari on direct appeal was denied by the Louisiana Supreme Court on November 17, 2021.    He had 90 days after the Louisiana Supreme Court denied his petition for certiorari on direct appeal, or until February 15, 2022, to seek review with the United States Supreme Court.    *See Roberts v. Cockrell*, 319 F.3d 690, 693 (5th Cir. 2003).    The central issue in this case is whether the United States Supreme Court petition for certiorari was filed on or before February 15, 2022.    In its response, the State contends that it was not timely filed.    In support, the State attaches a copy of the petition Laue filed with the United States Supreme Court.[27]    That petition is signed and dated March 3, 2022.

---

[27]  ECF No. 16-1.    *See also* No. 21-7384 at https://www.supremecourt.gov/docket

The docket sheet reflects a "Proof of Service" executed that same date.     The petition was filed with the Supreme Court on March 10, 2022.     This is the only evidence in the record concerning the timing of his filing and it shows that he did not sign the application until well beyond the date it was due.     Laue has not filed a reply or submitted evidence to prove timely filing with the United States Supreme Court.     Given these undisputed facts, and because the U.S. Supreme Court's unexplained denial of relief cannot be interpreted as an indication that it found the application timely, *Catchings v. Fisher*, 815 F.3d 207, 210 (5th Cir. 2016), the Court has no basis to find that Laue's application to the U.S. Supreme Court was timely filed.     In *Catchings*, the Fifth Circuit rejected petitioner's argument that the Supreme Court, by denying his petition without explanation, did not dismiss his petition as untimely, but instead exercised its discretion to consider out-of-time petitions, and thus his conviction did not become final until that petition was denied.     *Id.*; *see also Coast v. Georgia*, Civ. Action No. 24-169, 2025 WL 307281, at *2 (S.D. Ga. Jan. 27, 2025) (state-court conviction became final 90 days after the Supreme Court of Georgia affirmed it and petitioner's untimely petition for a writ of certiorari to the United States Supreme Court did not affect finality), *adopted*, 2025 WL 586668 (S.D. Ga. Feb. 24, 2025).[28]

---

[28] The same analysis is applied in finality calculations for 28 U.S.C. § 2255 petitions.     *See*, *e.g.*, *United States v. Wheaten*, 826 F.3d 843, 848-51 (5th Cir. 2016) (holding that when a defendant files an untimely certiorari petition seeking direct review of his conviction, and the Supreme Court gives no indication that it excused the untimeliness, the denial of the petition without comment does not affect finality for purposes of § 2255(f)(1)'s one-year limitations period); *Parks v. United States*, No. 18-cr-0317, 2025 WL 1287225, at *6 (D. Md. Apr. 3, 2025), *adopted*, 2025 WL 1284331 (D. Md. May 2, 2025); *United States v. Begay*, No.

Similar to Laue, Catchings attempted to exploit a "seeming gap" in the Supreme Court's precedents concerning finality by arguing that finality did not occur until the U.S. Supreme Court denied his untimely petition for writ of certiorari, but the Fifth Circuit flatly rejected his argument:

> At its core, Catchings's argument is an attempt to exploit a seeming gap in the Supreme Court's precedents. In *Gonzalez v. Thaler*, –––U.S. ––––, 132 S.Ct. 641, 181 L.Ed.2d 619 (2012), the Supreme Court explained that section 2244(d)(1)(A) divides petitioners into two distinct categories: those who pursue direct review all the way to the Supreme Court and those who do not. For those who do, convictions become final when the Supreme Court "affirms a conviction on the merits or denies a petition for certiorari." *Id.* at 653. For those who do not, convictions become final "when the time for pursuing direct review in [the Supreme Court], or in state court, expires." *Id.* at 653–54; *see also Foreman v. Dretke*, 383 F.3d 336, 338 (5th Cir. 2004) (explaining that section 2244(d)(1)(A)'s limitations period begins to run for a petitioner who has pursued his appeal through the highest state court (1) "when the Supreme Court either rejects the petition for certiorari or rules on its merits," or (2) "[i]f no petition is filed," after the "90 days for filing a petition for certiorari to the Supreme Court" expires). What about those who file an untimely petition for certiorari, arguably thus pursuing direct review all the way to the Supreme Court? Into which category do those petitioners fall?
>
> In Catchings's view, because he *eventually* filed a petition for certiorari, he falls into *Gonzalez* 's first category of petitioners: those who pursue direct review all the way to the Supreme Court. Thus, he argues, his limitations period began to run when the Supreme Court rejected his petition.
>
> We reject this argument. That Catchings eventually filed a petition for certiorari, a year late, does not mean that the limitations period did not begin to run when he missed the deadline for doing so—or that he does not fall into *Gonzalez* 's second category of petitioners, those who do not pursue direct review all the way to the Supreme Court because "no petition is filed."3 *See Gonzalez*, 132 S.Ct. at 653 (noting that in *Jimenez v. Quarterman*, 555 U.S. 113,

18-cr-8107, 2025 WL 1195583, at *1-2 (D. Ariz. Feb. 27, 2025), *adopted*, 2025 WL 1192872 (D. Ariz. Apr. 24, 2025).

120, 129 S.Ct. 681, 172 L.Ed.2d 475 (2009), the Supreme Court "held that [petitioner's] judgment became final when his 'time for seeking certiorari review in this Court expired' "); *Wall v. Kholi*, 562 U.S. 545, 548, 131 S.Ct. 1278, 179 L.Ed.2d 252 (2011) (explaining that "respondent's conviction became final on direct review when his time expired for filing a petition for a writ of certiorari in this Court" (citing *Jimenez*, 555 U.S. 113, 129 S.Ct. 681)); *Roberts*, 319 F.3d at 694 ("If the conviction does not become final by the conclusion of direct review, it becomes final by 'the expiration of the time for seeking such review,' " including the 90–day period within which to file a petition for certiorari.). A contrary rule would permit any petitioner who missed the 90–day certiorari deadline to file a petition for certiorari years later and argue that his one-year limitations period did not begin until that late petition was denied. We thus decline to read the Supreme Court's apparent practice of denying late petitions without explanation, rather than simply refusing to file them, as reviving the direct review of tardy petitioners for purposes of section 2244(d)(1)(A). *Cf. United States v. Buckles*, 647 F.3d 883, 889 (9th Cir. 2011) (rejecting argument that analogous limitations period in section 2255(f)(1) was restarted when Supreme Court forgave untimeliness of petition through its unexplained and apparently routine denial of that untimely petition).

*Catchings*, 815 F.3d at 210-11.     Here, when Laue missed the 90-day deadline for filing his petition for writ of certiorari with the U.S. Supreme Court, his conviction became final, and the federal one-year limitations period began to run.     *Catchings*, 815 F.3d at 210.     The AEDPA one-year limitations period commenced on February 15, 2022, and expired one year later, on February 15, 2023.     Therefore, his federal petition, filed on January 15, 2025, is untimely unless the deadline was extended through tolling.

*B.  Statutory Tolling*

The Court finds no basis for statutory tolling in this case.     The AEDPA expressly provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall

not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). Laue had no such applications pending before the state courts at any time between February 15, 2022, and February 15, 2023. His petition for writ of certiorari, filed in March 2022, did not toll the federal limitation period, because it sought further *direct* appellate review (albeit in an untimely fashion). *Butler*, 533 F.3d at 318 ("Under [Section 2244(d) it is only state post-conviction relief proceedings that cause tolling."); *Wiley v. Cain*, Civil Action No. 16-3408, 2017 WL 8785559, at * 4 (E.D. La. Oct. 17, 2017), *adopted*, 2018 WL 1726256 (E.D. La. Apr. 10, 2018). Laue's first state-court application for post-conviction relief was filed under the mailbox rule on March 27, 2023. Because his petition was not filed until *after* the one-year federal limitations period had already expired, it did not afford him any tolling benefit *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000); *Magee v. Cain*, Civ. Action No. 99–3867, 2000 WL 1023423, at *4 (E.D. La. July 24, 2000), *aff'd*, 253 F.3d 702 (5th Cir. 2001); *Williams v. Cain*, Civ. Action No. 00–536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000). Once the federal limitations period expired, "[t]here was nothing to toll." *Butler v. Cain,* 533 F.3d at 318. Thus, because Laue had no other state applications pending at any time during the one-year limitations period, he is not entitled to any statutory tolling credit pursuant to Section 2244(d)(2).

C. *Equitable Tolling*

The AEDPA's statute of limitations is subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 645 (2010). However, "a petitioner is entitled to equitable tolling only if he

shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."    *Id*. at 649 (internal quotation marks omitted).    A petitioner bears the burden of proof to establish entitlement to equitable tolling.    *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002).

Laue does not argue that equitable tolling applies in this case.    The State contends that equitable tolling is inapplicable because the case presents no extraordinary circumstances, and Laue was not diligent in waiting 16 months to file his state court post-conviction relief application after the Louisiana Supreme Court denied his application for writ of certiorari and 11 months after the United States Supreme Court denied his petition for writ of certiorari.[29]    In the event Laue argues for equitable tolling in any objections to this Report and Recommendation, the Court finds no extraordinary circumstances exist that would warrant equitable tolling.

He has not alleged that he was constrained in any manner from pursuing relief due to the Covid-19 pandemic; nor would general allegations to this effect suffice.[30]    *See Banks v.*

---

[29]  ECF No. 16 at 8.

[30]  In fact, at the time the Louisiana Supreme Court denied the writ of certiorari (November 17, 2021), the 90-day deadline for filing a U.S. Supreme Court petition for writ of certiorari was back in effect and the order extending it to 150 days due to the Covid-19 pandemic had been rescinded. *See Rules of the Supreme Court of the United States-Miscellaneous Order addressing the Extension of Filing Deadlines [COVID-19]*, 334 F.R.D. 801 (2020) (extending the period to file a petition for certiorari from 90 days to 150 days for petitions due on or after March 19, 2020); *Miscellaneous Order Rescinding COVID-19 Orders*, 338 F.R.D. 801 (2021) (rescinding the extension for orders denying discretionary review issued on or after July 19, 2021).

*Hooper*, Civ. Action No. 21-1788, 2024 WL 3100690, at *5-6 (E.D. La. Apr. 2, 2024); *Blunt v. Hooper*, Civ. Action No. 23-1492, 2024 WL 183482, at *3 (E.D. La. Jan. 17, 2024).    Lack of knowledge surrounding relevant legal deadlines, including the one-year *federal* limitations period specifically set forth in Rule 3(c) for Section 2254 Cases and federal statutory law, provides no basis for equitable tolling.    *Puderer v. Vannoy*, Civ. Action No. 17-324, 2018 WL 1319023, at *8 (E.D. La. Jan. 26, 2018), *adopted*, 2018 WL 1287621 (E.D. La. Mar. 13, 2018) (rejecting petitioner's assertions that he mistakenly relied upon the two-year limitations period under state law or lacked instructions as to the federal limitations period as "extraordinary circumstances" warranting equitable tolling).    It is well-settled that mistake, ignorance of the law, and a prisoner's *pro se* status do not suffice to justify equitable tolling.    *Johnson v. Quarterman*, 483 F.3d 278, 286 (5th Cir. 2007); *Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir. 2002); *Fierro v. Cockrell*, 294 F.3d 674, 682 (5th Cir. 2002); *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000).    As previously discussed, Section 2244(d)(2) does not toll the limitations period during the pendency of a petition for writ of certiorari in the United States Supreme Court.    *Butler*, 533 F.3d at 318.    To the extent Laue may have believed otherwise or may have been unaware or confused about the filing deadlines, it does not constitute an "extraordinary circumstance" that would entitle him to equitable tolling. Accordingly, the Court finds that Laue has not demonstrated entitlement to equitable tolling.

   *D. Actual Innocence*

Laue has not invoked the actual-innocence exception to avoid the time-bar.    To the

extent that he might attempt to raise such an argument, he offers no evidence in support of an actual-innocence claim.    In *McQuiggin v. Perkins*, the United States Supreme Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass... [to excuse] the expiration of the statute of limitations."    *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).    The Supreme Court has cautioned, however, that "tenable actual-innocence gateway pleas are rare[.]"    *Id.*    To succeed on this claim, a petitioner must present a credible claim of actual innocence based on "new reliable evidence... that was not presented at trial," and he "must show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt" in light of that new evidence of his factual innocence.    *Schlup v. Delo*, 513 U.S. 298, 324-29 (1995).

Here, Laue's claims target primarily his conviction for second-degree murder, not the drug possession and distribution charges.    And, in that context, he disputes the evidence supporting the causation element because of the victim's heroin addiction and relationships with other drug dealers besides him.    In rejecting his sufficiency claim on direct appeal, the First Circuit determined:

> Herein, the jury heard the testimony and had the opportunity to review the phone records regarding the victim's communications around the time of his death and rejected the hypothesis that the heroin that caused the victim's death was purchased from a dealer other than the defendant. Ali unequivocally testified that she and the victim were purchasing heroin from the defendant at the time of the victim's death, that the victim arranged to and did purchase heroin from the defendant on the date of his death, and that she had a subsequent conversation with the defendant wherein he confirmed providing the heroin to the victim on the day in question. The phone records in this case overwhelmingly corroborate Ali's testimony that the victim

purchased the heroin at issue from the defendant. The State elicited testimony to show the victim's actions on the day in question that led to his death, from when the victim arranged the transaction with the defendant, obtained money from Ali, and met the defendant, to when he arrived home briefly before ingesting the heroin and losing consciousness. Specifically, the record reflects a 3:24 p.m. text message from the victim to the defendant indicating that he was about to "pull in," that the victim failed to respond to his girlfriend's text message at 4:20 p.m., and was found dead at approximately 5:00 p.m. Thus, the jury could have reasonably concluded that the victim made and fulfilled arrangements with the defendant to purchase the heroin that caused his death.

In reviewing the evidence presented at trial, we cannot say that the jury's determination was irrational under the facts and circumstances presented. *See Ordodi*, 946 So.2d at 662. Based on the record before us, the jury could have concluded that (1) the defendant distributed heroin to the victim, (2) the victim ingested or consumed the CDS, and (3) the victim died as a direct cause of ingesting or consuming the CDS.[31]

Laue offers no new evidence to support an "actual innocence" claim, much less the compelling grounds need to prove "actual innocence."  Nor would establishing the existence of conflicting evidence or credibility issues, *see*, *e.g.*, *Bosley v. Cain*, 409 F.3d 657, 665 (5th Cir. 2005), satisfy the rigorous burden of proving that "more likely than not no reasonable juror would have found him guilty beyond a reasonable doubt."  *Schlup*, 513 U.S. at 324.  Laue fails to point to any new, reliable, and noncumulative evidence to substantiate a claim of factual innocence.

In sum, the instant petition was filed beyond the one-year federal limitations period. Laue has not established any credible basis for tolling or actual innocence to avoid the time-

---

[31]  *State v. Laue*, 326 So.3d at 279.

bar.[32]    His federal application for habeas corpus relief is therefore untimely and should be dismissed with prejudice.

### E.  Motion to Stay

Laue has also filed a motion to stay the federal habeas proceedings.[33]    Laue claims he is entitled to stay the federal proceedings so that he may "exhaust two new interpretations of [state] constitutional law that were recently handed down by the Louisiana Supreme Court."[34]    He recently began another round of post-conviction relief proceedings in the state district court after the Louisiana Supreme Court decided *State v. West*, 2024-0133 (La. 1/28/25), 399 So.3d 405 (finding that the court of appeal erred to the extent it applied a per se rule of admissibility for autopsy reports) (citing *Smith v. Arizona*, 602 U.S. 779, 803, 144 S.Ct. 1785, 1802, 219 L.Ed.2d 420 (2024)), and *State v. Bartie*, 2024-897 (La. 2/6/25), 400 So.3d 896 (reversing a conviction for second-degree murder, based on unlawful distribution

---

[32]  Though not suggested by Laue, the Court notes in an abundance of caution that allegations of ineffective assistance of counsel have no bearing on the timeliness of a federal petition. *Shank v. Vannoy*, Civil Action No. 16-30994, 2017 WL 6029846, at *2 (5th Cir. Oct. 26, 2017) (Higginson, J.) ("*Martinez* does not apply to § 2244(d)'s one-year limitations period.") (citing *Lombardo v. United States*, 860 F.3d 547, 557–58 (7th Cir. 2017); *Arthur v. Thomas*, 739 F.3d 611, 630–31 (11th Cir. 2014); *Bland v. Superintendent Greene SCI*, 2017 WL 3897066, at *1 (3d Cir. 2017) (denying COA); *Shokr v. Vannoy*, Civ. Action No. 21-319, 2022 WL 22671878, at *5-6 (E.D. La. Mar. 3, 2022), *adopted*, 2024 WL 1005997 (E.D. La. Mar. 8, 2024).

[33]  ECF No. 17, "Notice of Pendency of Action and Request of Stay."

[34]  *Id.*

of a controlled substance that caused the victim's death, for insufficient evidence).[35]    Laue claims he falls within an exception to the two-year time limitation for filing post-conviction relief applications under state law (La. C.Cr.P. art. 930.8), for claims "based upon a final ruling of an appellate court establishing a theretofore unknown interpretation of constitutional law that is retroactively applicable to the case and filed within one year of the ruling."[36]

The State was instructed to respond and has filed an opposition to Laue's motion to stay.[37]    The State argues that a stay is not appropriate because new interpretations of constitutional law do not apply retroactively in federal habeas corpus proceedings and because Laue's federal petition is untimely.    The Court agrees that a stay is not warranted in this case.

In appropriate cases, the Court has discretion to stay "mixed" petitions—those with both exhausted and unexhausted claims—pending resolution of the unexhausted claims in state court.    *Rhines v. Weber*, 544 U.S. 269, 278 (2005).    As the Supreme Court explained in *Rhines*:

> Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition. Cf. *Duncan, supra*, at 180, 121

---

[35]  Laue supplemented his federal petition to include a discussion regarding the Louisiana Supreme Court's decision in *Bartie.*    (ECF No. 8).

[36]  ECF No. 17 at 2.

[37]  ECF No. 19.

S.Ct. 2120 ("[D]iminution of statutory incentives to proceed first in state court would ... increase the risk of the very piecemeal litigation that the exhaustion requirement is designed to reduce").

For these reasons, stay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless. Cf. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

*Id.* at 277-78.

Although Laue states that he "desires to fully exhaust his state remedies,"[38] the record demonstrates that Laue has presented the two claims at issue to every level for state-court review, and the state courts have had the opportunity to consider them.[39] Laue now wants to assert a renewed sufficiency-of-the-evidence claim and confrontation-violation claim in the state courts because of two recent Louisiana Supreme Court decisions rendered in cases pending on direct appeal. In *Bartie*, the Louisiana Supreme Court affirmed the Louisiana Third Circuit Court of Appeal's decision finding insufficient evidence to convict

---

[38] ECF No. 17 at 2.

[39] He raised sufficiency of the evidence on both direct appeal and post-conviction review, and he raised the confrontation violation on post-conviction review. *See* ECF No. 15-7 at 200 (No. 2020-KA-0225, Direct Appeal Opinion); ECF No. 15-8 at 11 (Louisiana Supreme Court Application for Writ of Cert. No. 2021-1329); ECF No. 15-9 at 61 (PCR); ECF No. 15-10 at 4 (Louisiana First Circuit Writ No. 2024 KW 0438); ECF No. 15-11 at 7 (Louisiana Supreme Court Writ No. 24-KH-1186).

defendant of second-degree murder as the provider of a drug implicated in the poly drug toxicity death of the victim.    In *West*, the Louisiana Supreme Court found the court of appeal erred in applying a per se rule of admissibility for autopsy reports, citing to *Arizona v. Smith*, 602 U.S. 779 (2024).

However, under Supreme Court precedent, a new rule of criminal procedure ordinarily "does not apply retroactively to overturn final convictions on federal collateral review."    *Edwards v. Vannoy*, 593 U.S. 255, 263 (2021); *see also Rodriguez v. Warden*, Civ. Action No. 25-238, 2025 WL 2620942, at *5 (N.D. Ind. Sep. 11, 2025) (noting *Smith* was a direct appeal and there is no language in it indicating that it has retroactive application to cases that are on collateral review and finding persuasive the conclusion by at least two district courts called to decide the issue that *Smith* is not likely to be made retroactive to cases that are on federal habeas review).    Because the holding in *Smith* is inapplicable to Laue's federal collateral attack on his conviction, there is no reason for the Court to stay proceedings while he exhausts that claim in state court.[40]    And *Bartie* is not premised on a change in federal law, but rather, a case-specific analysis of sufficiency of evidence.    Thus, Laue's attempt at a second bite of the apple on this claim on state court post-conviction relief will likely fail.    Indeed, despite his speculation that the state courts will review his claims

---

[40] For a claim to be timely under 28 U.S.C. § 2244(d)(1)(C), a petitioner must not only demonstrate that he is invoking a new constitutional rule, but also that the Supreme Court has made that rule retroactively applicable. *Tyler v. Cain*, 533 U.S. 656, 662-63 (2001) (holding that "a new rule is not made retroactive to cases on collateral review unless the Supreme Court holds it to be retroactive").

anew, the state courts may very well find his repackaged claims, which were previously raised, to be untimely and/or repetitive and thus procedurally barred.[41]   Furthermore, a *Rhines* stay is not warranted here because the federal petition is untimely.   *See Palmer v. Hollibaugh*, Civ. Action No. 24-3110, 2025 WL 1892702, at *6 (E.D. Pa. May 22, 2025), *adopted*, 2025 WL 1891679 (E.D. Pa., July 08, 2025); *Victor v. Boutte*, Civ. Action No. 21-484, 2021 WL 6621683, at *1 (E.D. La. Dec. 17, 2021), *adopted*, 2022 WL 194487 (E.D. La. Jan. 21, 2022).   Laue's federal claims plainly require no further exhaustion for which a stay would be necessary.   He has not shown good cause for a stay and abeyance of the federal habeas proceedings.[42]

## RECOMMENDATION

For the foregoing reasons, Joseph Valchez Laue's "Notice of Pendency of Action and Request for Stay" (ECF No. 17) should be **DENIED** and his federal application for habeas

---

[41]   In fact, in his original post-conviction relief proceedings, his sufficiency claim was not reviewed.   The state district court cited Louisiana Code of Criminal Procedure article 930.4 (A), as a procedural bar to post-conviction review, because the claim was already thoroughly reviewed on direct appeal.   And the Louisiana Supreme Court denied his original supervisory writ application as untimely. ECF No. 15-11.

[42]   Laue also does not contend that resolution of his federal habeas claims would prevent him from proceeding with his pending state-court post-conviction proceedings on those claims.   *See Evans v. Cain*, 577 F.3d 620, 623 (5th Cir. 2009) (denying motion to stay the determination of petitioner's remaining claim while he sought re-review of his original claims in the Louisiana Fifth Circuit Court of Appeal according to the Louisiana Supreme Court's opinion in *State v. Cordero*, because "Evans does not argue that he will be barred from obtaining re-review in the state court by our continued review and disposition of his habeas case [and]… no party here argues that Evans's remaining claim is unexhausted.").

corpus relief should be **DISMISSED WITH PREJUDICE** as untimely**.**    A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.    28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[43]

New Orleans, Louisiana, this ___4th___ day of _____November_____, 2025.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[43] *Douglass* referenced the previously applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to 14 days.